## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASHAM, RINGE Y CORREA, S.C.<br>Paseo de los Tamarindos No. 100 Piso 5<br>Bosques de Las Lomas, 05120<br>Cuajimalpa de Morelos, Ciudad de México, México<br><br>    Plaintiff,<br><br>   -against-<br><br>ARIZONA BEVERAGES USA LLC<br>One Arizona Plaza, 60 Crossways Park Drive<br>Suite 400<br>Woodbury, NY 11797-2018<br><br>    Defendant. | Case No. 23-cv-8223<br><br><br>**COMPLAINT** |

Plaintiff Basham, Ringe y Correa, S.C. ("Plaintiff" or "Basham"), by its attorneys Lewis Baach Kaufmann Middlemiss PLLC, alleges on knowledge as to itself and its own actions, and on information and belief as to all other matters, as to its complaint against Defendant Arizona Beverages USA LLC ("Defendant" or "Arizona USA") as follows:

## INTRODUCTION

1.     Plaintiff is a law firm in Mexico City, Mexico, and brings this action to recover payment of $441,122.90 in outstanding charges for legal services that it provided to Defendant from September 2015 through April 2022, at Defendant's request and pursuant to the Parties' agreement.

2.     Plaintiff's legal services consisted of successfully resisting several different legal actions brought in Mexico by an individual named Eugenio Barbachano that alleged wrongdoing by Defendant and its affiliates.  Among the actions were two criminal investigations against

Defendant's President, David Menashi.  Plaintiff also advised Defendant in connection with a civil suit against Barbachano that its affiliates brought in New York state court.  In addition, Plaintiff represented the external counsel of Defendant's Mexican subsidiary in filing a criminal complaint against Barbachano and public officials, and in the ensuing criminal investigation, alleging that they conspired to unlawfully detain him.

3.    Defendant has repeatedly acknowledged, in writing and orally, its outstanding debt to Plaintiff, and has repeatedly promised to become current on its invoices, to which it has never objected.  Plaintiff has made several demands for Defendant to pay the open invoices in accordance with these promises and the Parties' agreement, but Defendant has not done so.  Plaintiff therefore is forced to bring this action to remedy Defendant's material breaches and recover payment of the outstanding charges it is owed.

<u>**THE PARTIES AND RELATED INDIVIDUALS AND ENTITIES**</u>

4.    Plaintiff Basham, Ringe y Correa, S.C. is a law firm incorporated under Mexican law.[1] Established in 1912, Basham has earned a reputation as one of Mexico's most capable and prestigious law firms.  A full-service law firm, it advises Mexican and foreign clients across a range of industries and subject areas on transactional, litigation, regulatory and other matters.

5.    Defendant Arizona Beverages USA LLC is a limited liability company organized and existing under the laws of the State of New York, having a principal place of business at One Arizona Plaza, 60 Crossways Park Drive, Suite 400 Woodbury, NY 11797-2018.  It sells iced tea and other non-carbonated beverages under the "AriZona" trademark.  Founded in 1992 by Don Vultaggio, it has grown to become one of the largest privately-owned beverage companies in the

---

[1] Its legal form under Mexican law is a "professional corporation."  The abbreviation S.C. stands for *Sociedad Civil* in Spanish, which in substance translates to "professional corporation."

United States.  A valuation provided in the context of litigation concerning the company concluded that as of October 5, 2010, the company and its affiliates were worth about $2 billion.

6.    The individuals who communicated with Plaintiff throughout the Parties' contractual relationship were Mr. David Menashi and Mr. Martin Cunningham.  Mr. Menashi was President of Defendant Arizona USA during the period of Plaintiff's contractual performance and remains one of its senior officers.  Mr. Cunningham was also a senior officer of Arizona USA during the events described below, and is listed as Arizona USA's registered agent for service of process on the New York Department of State website.

7.    Arizona USA is the parent corporation of several affiliated entities.  Those relevant to this Complaint include Beverage Marketing USA, Inc. ("BMU"), Arizona International, LLC ("Arizona International"), and Hornell Brewing Co. ("Hornell").  BMU is the owner of the "AriZona" trademark.  Arizona International is a licensee of this trademark and markets Arizona USA's products internationally, while Hornell oversees the sales of AriZona-branded beverages throughout the United States.  These three entities share the same principal place of business as Arizona USA.  David Menashi is listed as the CEO of BMU and Hornell on the New York Department of State website.[2]

8.    Arizona USA has a Mexican subsidiary, Arizona Beverages de México, S. de RL de CV ("Arizona Mexico").  At all relevant times Arizona Mexico did not, and still does not have, an office or employees.  Its only representative was a lawyer named Juan Villagra, a sole practitioner with the law firm Villagra Abogados Asociados.  As detailed below, throughout the Parties' relationship, all decisions pertaining to Arizona Mexico were made or approved by Messrs. Cunningham and Menashi of Arizona USA.

---

[2] The website does not list a CEO for Arizona International.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2).  Plaintiff is a citizen of Mexico, while Defendant is an LLC whose members, upon information and belief, are not citizens of a foreign state and are citizens of at least one State in the United States, including New York.[3]  The amount in dispute exceeds $75,000 because it is $441,122.90, exclusive of interests and costs.

10.      This Court has personal jurisdiction over Defendant because Defendant is organized under the laws of the State of New York and its principal place of business is in New York.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2). Defendant resides in this District because its principal place of business is in this District and because it is subject to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### A.      In 2015 Defendant Hires Plaintiff in Writing to Provide Legal Services

12.      In or around late August 2015, Mr. Cunningham contacted Jorge de Presno, a Partner at Basham specializing in labor matters.  The two discussed an action before the Mexican Labor Board that had just been brought by an individual named Eugenio Barbachano against Arizona Mexico.

13.      On September 2, 2015, Mr. Cunningham by email requested to Mr. Presno, "Please forward to me an engagement letter and your rates as well."  Mr. Presno sent the engagement letter. The engagement letter was addressed to "Martin Cunningham Esq." and "Arizona Beverages, One

---

[3] Arizona USA's website describes it as "Family-owned and operated since 1992" by the Vultaggio family.  Mr. Vultaggio is an American citizen who lives in New York, as are and as do his sons.

Arizona Plaza suite 400, Woodbury, NY, 11797." It stated that Basham would "generate[] a monthly bill that will be transmitted to you." It also "submit[ted] for your approval a retainer in the amount of US$75,000.00 plus applicable VAT."

14.     On September 9, 2015, Mr. Cunningham wrote:

> Jorge:
> This will confirm our conversation today in which it was agreed that we have engaged the services of Basham to represent us in the above matter. We agreed that we will pay the invoices issued by Basham in accordance with the hourly rates described in the draft retention agreement. We also agreed that no retainer will be required.
> Regards,
> Martin

15.     Mr. Presno responded the same day, "Thanks Martin. Correct."

16.     Basham began performing legal acts in the labor matter, including attending hearings.

17.     Barbachano then filed a *medios preparatorios a juicio* ("preparatory measures for trial")[4] against Arizona Mexico in civil court, in anticipation of bringing a commercial action against it. Basham was informed of the *medios preparatorios* by Mr. Villagra on September 8, 2015, and it organized a conference call with Mr. Cunningham of Arizona USA and Mr. Villagra to discuss strategy that same day. On September 23, 2015, Hector Calatayud, Of Counsel at Basham, emailed Mr. Cunningham, Mr. Menashi, and Heather Capriola, the Controller of Arizona USA. The email provided a detailed discussion of work that Basham had done on the commercial matter, and its proposed strategy and next steps. It concluded, "Finally, we will appreciate whether the bill for the services mentioned herein should be sen[t] to you or to AMEX [Arizona Mexico]."

---

[4] This is a special procedure by which a party tries to obtain another party's admission of certain facts.

There was no response to this query; however, on September 30, 2015, Basham sent an invoice to Arizona USA (as would be the case for all future invoices for the Barbachano matters).

18.    Barbachano then brought the commercial claim in civil court against Arizona Mexico, and three criminal complaints in relation to the dispute.  One criminal complaint was against Juan Villagra, external counsel of Arizona Mexico, and the other two against Mr. Menashi, President of Arizona USA, Arizona USA's other members and legal representatives, Arizona Mexico and Juan Villagra.  Basham performed the legal acts comprising the defense against the commercial claim and these criminal complaints.

19.    On June 29, 2016, Barbachano emailed a settlement offer to Mr. Cunningham and Mr. Menashi of Arizona USA.  He did not include among the recipients Juan Villagra, the external counsel of Arizona Mexico, nor any other persons affiliated therewith, because none existed.  In the opening paragraph of his email Barbachano explicitly identified attorneys from Basham as Arizona USA's lawyers:

> Don [Vultaggio],[5] David [Menashi] and Martin [Cunningham],
>
> Good morning. As you will surely hear from **your attorneys** Jorge de Presno, Luis Alvarez et al today, through mediation and a close analysis of the numbers, facts, etc., the Federal Judge Presiding over the Labor Board has come up with two scenarios by which she feels we can all move forward and settle the pending matters before us once and for all.[6]

20.    Overall, from September 30, 2015 through March 30, 2017, Plaintiff Basham sent to Defendant Arizona USA 49 invoices for its work on Barbachano's various actions.  The total amount due under these invoices was $599,835.31.  The invoices were addressed to "Arizona Beverages, One Arizona Plaza Suite 400, Woodbury, New York, New York, United States of

---

[5] Mr. Vultaggio's email address was not among the recipients, perhaps inadvertently.
[6] Emphasis added.

America, Attn: Marting Cunningham."  The emails transmitting them were sent to Mr. Cunningham, Mr. Menashi, and other recipients with the @drinkarizona.com email address.  They were not sent to Juan Villagra, the sole representative of Arizona Mexico.  The invoices, and attached time entries describing the legal work performed, were written in English.

21.     Arizona USA paid or caused to be paid $146,611.02 against these invoices during the same period, leaving a substantial amount outstanding.  The wire transfer details for the payments indicated that the holder of the originating account was located at "400 60 Crossways Park Dr., W. Woodbury NY USA 11797," which is Arizona USA's address.

22.     Separately, Basham invoiced Arizona Mexico for $7,598.10 during this time period, for advice it provided on tax filings required under Mexican law.  The invoices were addressed to "Arizona Beverages de Mexico S de RL de CV, Xocotla No. 5, Tlalpan Centro, Tlalpann, 1400 México, Ciudad de México."  The emails transmitting them were sent to Olivia Swenson, an employee of Arizona USA based in its New York office. The invoices, and attached time entries describing the legal work performed, were written in Spanish.

**B.      On May 12, 2017, the Parties Enter into a Written Agreement Providing for Plaintiff's Continued Legal Representation and Defendant's Payment of Past and Future Invoices**

23.     Mr. Menashi, President of Arizona USA, sent the following email to Alejandro Catalá, a Partner at Basham specializing in criminal litigation, on May 12, 2017.  The email memorialized an oral agreement between Plaintiff and Defendant.  It stated:

> Dear Alejandro,
> Today I am sending you a wire for the amount of US$187,257.00 in accordance with our agreement.
> The below confirms our agreement as follows:
> 1. As of May 2, 2017 the outstanding invoices total US$453,224.29.
> 2. The amounts to be paid in full satisfaction of this balance and their payment times are:
>     a.  Against the first US$300,000:

      i.  US$150,000.00 today
      ii.  US$150,000.00 in 60 days

  b.  Against the US$53,224.29: US$37,257.00 (70%) today

  c.  Against the remaining US$100,000.00:

      i.  Timing: Upon the satisfactory final dismissal, including all appeals, of the 2 criminal complaints made by Barbachano against us

      ii.  Amount: US$70,000.00 (70%)

      iii.  At that time you and I will discuss whether a fixed sum per month in lieu of hourly billing is appropriate

3. Prospectively, all invoices for time pre-approved by Martin and/or me incurred will contain a 30% discount to the applicable hourly rates.

4. Every other Wednesday, beginning with this Wednesday May 17, at 1pm NY time you and Martin [Cunningham] and/or I will agree on what your firm will do on our behalf.

5. No other time will be incurred on the Arizona account without this approval process.

I wish you a wonderful weekend,

Best,

David

## C. Plaintiff Performs the Agreement with Defendant

24. As it had done prior to May 12, 2017, Plaintiff continued providing legal services to Arizona USA in connection with the dispute with Barbachano.

### a. Plaintiff Provides Legal Services to Defendant, Including Concerning Defendants' Affiliates' Lawsuit in New York

25. Basham's attorneys carried out the defense against Barbachano's various actions. They communicated on a near weekly basis with Mr. Menashi and/or Mr. Cunningham of Arizona USA, via email and on conference calls, providing the latter with updates on the matters and seeking their instructions. All of Basham's communications on the Barbachano matters were with Mr. Menashi and/or Mr. Cunningham of Arizona USA.

26. Messrs. Menashi and Cunningham approved Basham's legal strategy. For example, they provided authorization to Basham to engage a handwriting expert and take necessary steps to undermine Barbachano's criminal complaints, such as filing constitutional

*amparo* challenges; they also set the budget for these steps.  A particularly sensitive issue arose when a court-appointed expert in one of the matters demanded production of the Arizona entities' accounting records; Messrs. Menashi and Cunningham and Basham had several discussions on how to respond to this request.

27.    Messrs. Menashi and Cunningham also sought Basham's advice concerning a lawsuit that Arizona USA's affiliates, BMU and Arizona International, brought against Barbachano before the New York State Supreme Court in Nassau County.[7]  In their complaint, Arizona USA's affiliates alleged that "at all relevant times herein, since approximately January 2007, [Barbachano] was retained by BMU, at his insistence as an independent contractor/consultant, using the title of Director of International Operations and Sales for Arizona International."  They claimed that Barbachano had breached his contractual and fiduciary duties to them.  They denied entirely the existence of any relationship between Barbachano and Arizona Mexico, which they did not acknowledge by name, but referred to as "another entity":

> However, after parting with Plaintiffs, commencing in or about August 2015, [Barbachano] conceived and implemented a tortious scheme to inflict harm on Plaintiffs.
>
> In that regard, in or about August 2015, [Barbachano] filed frivolous legal proceedings in Mexico (collectively the "Frivolous Mexico Actions") predicated upon knowingly false claims that are irreconcilable with his prior sworn testimony.
>
> Those claims include: (a) a ***perjurious*** claim of having been an employee of another entity as opposed to an independent contractor/consultant for BMU and (b) a false and fraudulent claim based on the alleged existence of a never-before disclosed purported 2006 agreement in Spanish that Defendant claims to have entered into (while still an employee of Hornell in New York) with another entity, but which, upon information and belief, contains a forged signature (the "2006 Forged Document").[8]

---

[7] The index number for the matter is 605902/15.

[8] Emphasis in original.

28.    Furthermore, Arizona USA's New York affiliates identified themselves as the targets of Barbachano's legal actions in Mexico and as having incurred the legal fees: "As a result of [Barbachano's] frivolous and perjurious claims, ***Plaintiffs have been dragged into the Mexican judicial system and forced to incur legal expenses***, all as part of a scheme to extort money from Plaintiffs." (Emphasis added)

29.    The New York State Supreme Court, for its part, denied Barbachano's motion to dismiss for *forum non conveniens* or to transfer the action to Mexico.  Accepting the argument of Arizona USA's affiliates, the court found that, "because Arizona's business plan to expand into Central and South America was formed here, the situs of the action is New York."

30.    The New York matter settled in April 2019.  However, while it was pending, Mr. Cunningham and Mr. Menashi repeatedly sought Basham's assistance for this matter.  As they told Basham attorneys, "part of the claim that we have made in the US lawsuit is that [Barbachano] filed a fraudulent lawsuit in Mexico based on a forged document."  Basham's efforts in the Mexican proceedings therefore effectively 'set up' the arguments Arizona USA's affiliates would make in the New York litigation.  Basham's attorneys advised Mr. Cunningham and Menashi on which topics to discuss during depositions, and how to respond to likely questions from Barbachano's American lawyers.  Mr. Cunningham also emailed Basham the draft filings of Arizona USA's affiliates to review for incorrect or harmful arguments.

### b.  Defendant Is Satisfied with Plaintiff's Legal Services and Pays Some of Plaintiffs' Invoices

31.    Arizona USA expressed satisfaction with Basham's legal services, and asked Basham to continue providing these services despite Arizona USA's delays in paying invoices. On December 10, 2018, Basham Partner Alejandro Catalá informed Mr. Cunningham of certain decisions issued in the labor and commercial matters. He then stated, "as discussed in our last

conference call there are outstanding invoices pending to be paid, as it is showed in the attached, and we need you to proceed with payment immediately. Unfortunately, if this payment is not reflected within these days we will not be able to continue with the following legal actions."

32.    Mr. Cunningham responded three days later: "Alejandro: Thank you for your report below. ***We obviously want to you to proceed to take all necessary actions to protect our legal interests in both actions.*** I am reviewing the outstanding bills for payment, will discuss with Don [Vultaggio] and David [Menashi] and will contact you with any issues." (Emphasis added)

33.    Mr. Catalá of Basham responded the following day that the delay was unacceptable, and "This is not the first time we face this situation with you."  If payment was not received by year's end, Basham "will conclude [its] participation in this matter (both cases, civil and labor) and deliver to Juan Villagra [Arizona Mexico's outside counsel] the files and documentation of the case."

34.    Mr. Cunningham sent the following response the same day:

> Alejandro:
> I can see you are clearly frustrated and I want to be responsive. I looked back at my emails and did not see the issue of non-payment of fees raised and until I received this email I was not aware of the severity of the situation.
> ***We have always had a solid working relationship*** and I have appreciated working with you and your firm over the past 4 years on these various matters.
> And while the overall legal expense (***solely the cause of [Barbachano] and [Barbachano's] lawyers deceitful tactics***) has been far in excess of what we had expected for a simple labor case (as it began), ***I don't believe I have challenged the legitimacy of you or your firm's efforts. We appreciate all of [the] work performed to protect our interests and the results achieved under difficult conditions***. We have even spoken of your firm's valiant efforts to other US companies who are considering doing business in Mexico.
> ***Nevertheless, we wish to continue to work with your firm on this matter***. I will give you an update on your request for payment as soon as I have it.

Thanks
Martin[9]

35.    Five days later, on December 19, 2018, Mr. Cunningham informed Mr. Catalá by email that "we are wiring this morning to Basham $112,000 in payment of a number of outstanding bills.  I am working on the other bills."

36.    Overall, from May 15, 2017 through April 21, 2022, Plaintiff Basham sent to Defendant Arizona USA 112 invoices for its work on Barbachano's complaints.  The total amount due under these invoices was $629,349.41.  They applied a 30% discount pursuant to the May 12, 2017 agreement.  Basham continued charging its 2017 rates in subsequent years.

37.    The invoices were addressed to "Arizona Beverages, One Arizona Plaza Suite 400, Woodbury, New York, New York, United States of America, Attn: Marting Cunningham."  The emails transmitting them were sent to Mr. Cunningham, Mr. Menashi, and other recipients with the @drinkarizona.com email address.  They were not sent to Juan Villagra, the external counsel and sole representative of Arizona Mexico.  The invoices, and attached time entries describing the legal work performed, were written in English.

38.    Arizona USA paid or caused to be paid $296,653.95 against these invoices during the same period.  The wire transfer details for the payments indicated that the holder of the originating account was located at "400 60 Crossways Park Dr., W. Woodbury NY USA 11797," which is Arizona USA's address.

39.    Basham achieved successful results for Arizona USA.  Barbachano's criminal complaints (including against Mr. Menashi, President of Arizona USA) were fully and finally dismissed by August 2020.[10]  Barbachano's commercial complaint was dismissed in its entirety,

---

[9] Emphases added.
[10] Thus triggering Defendant's obligation to pay the final installment of fees that had been incurred before May 2017.

and Barbachano was ordered to pay respondent's legal costs. The labor matter is pending on appeal, with the first instance Mexican Labor Board having refused to credit the forged agreement Barbachano presented to substantiate an alleged relationship with Arizona Mexico.

### c. Defendant Curtails the Already Minimal Role of Arizona Mexico in the Parties' Relationship

40.    Despite the fact that Arizona Mexico was the named respondent or defendant in Barbachano's legal actions, as noted all of Basham's communications, and requests for instruction and payment, were to Mr. Cunningham and Mr. Menashi of Arizona USA (and others with the @drinkarizona.com email address). Arizona Mexico did not have, and still does not have, an office or employees. Its only representative was its external counsel, the sole practitioner Juan Villagra. Basham initially included Mr. Villagra on some of its discussions and communications with Arizona USA as it pertained to legal strategy for the defense of Arizona Mexico, but Mr. Menashi and Mr. Cunningham approved all decisions.

41.    In 2018, Mr. Cunningham and Mr. Menashi instructed Basham to cease communication with Mr. Villagra, because they suspected that Mr. Villagra was colluding with Barbachano. The latest email sent by Basham to Mr. Villagra is dated July 12, 2018.[11] Of the 72 unpaid invoices that are the subject of this Complaint, 64 of them were issued after this date, *i.e.* after the only vestige of Arizona Mexico was removed from the Parties' relationship.

---

[11] The only exception is on July 16, 2019, when Basham requested Mr. Villagra's signature on a request for information to be filed by Arizona Mexico with the Attorney-General of Mexico. The information was sought to help Mr. Menashi and Mr. Vultaggio respond to inquiries they had received from an Assistant United States Attorney ("AUSA") for the Eastern District of New York, pursuant to a request for mutual legal assistance from the Mexican criminal authorities.

**D.     Defendant Breaches the Agreement with Plaintiff**

42.     Defendant Arizona USA accepted every invoice sent to it by Plaintiff Basham.  It never objected to an invoice.  However, until January 2020 it did not timely pay them, and after January 2020, stopped paying them altogether.

43.     On December 10, 2019, Basham's Manager of Accounts Receivable, Jaqueline Pérez Raygoza, emailed Mr. Cunningham, Mr. Menashi, and Ms. Capriola (Controller of Arizona USA) to inform them that the outstanding amount due from Arizona USA to Basham was $367,253.87.  She attached a spreadsheet listing every invoice that Basham had sent to Arizona USA, and the payment status for each invoice.  Ms. Raygoza sent a chasing email ten days later, and left a voicemail with Mr. Cunningham.

44.     On January 16, 2020, Arizona USA made a payment of $146,433 to Basham.  This was the final payment Arizona USA would make.

45.     Basham continued to provide legal services to Arizona USA.  Despite the outstanding invoices, Basham acted to preserve Arizona USA's rights in the Mexican proceedings.

46.     On September 15, 2020, Mr. Cunningham emailed Basham Partner Mr. Catalá, requesting an update concerning the strategy to enforce the favorable costs award against Barbachano from the commercial matter.  Mr. Catalá responded the next day, stating that it was more appropriate first to provide an update on the criminal matters (which had been recently resolved).  He concluded as follows: "Now, as we discussed and you agreed during our last conversation, it is of utmost importance that we receive prompt payment of the outstanding balance of accrued fees, according to the document (Excel) attached to this communication."

47.     Mr. Cunningham thanked Mr. Catalá for the helpful analysis and asked for a similar update concerning the labor matter, as well as the enforcement strategy for the costs award in the commercial matter.  He did not address Mr. Catalá's comment on the outstanding invoices.

48.     Mr. Catalá responded:

> Martin, we are ready to send you the information of the commercial and labor board matters, including the plan for ancillary proceeding related to the costs awarded to [Arizona Mexico]. However, we really need a response concerning the payment of our fees. Fortunately and as you can see, all the matters filed by Barbachano have been resolved favorable to Arizona's interest and we wish to continue like this, but as we have told before, we have come under pressure from our partners every time we have internal meetings and can hardly continue like this.

49.     Meanwhile, Mr. Menashi of Arizona USA asked Basham for a proposed budget to defend any constitutional challenges Barbachano would bring to the unfavorable judgments rendered against him.  On New Year's Day, 2021, Mr. Menashi stated: "We will be preparing a $75,000.00 check for Basham."

50.     On January 5, 2021, Mr. Catalá responded to Mr. Menashi, copying Mr. Cunningham:

> Dear David,
> Thank you for your email and your offer to pay US$75,000.00 dollars to Basham this week.
> However, as you know, the outstanding balance of our fees for services rendered amounts to around US$400,000.00 dollars. More so, it is uncertain if and when we will be paid.
> Our partners have instructed Jorge and I, as we have discussed with you several times in the past, to immediately stop our services. We will only move forward if we receive from you, this week a detailed email with your solid commitment and a feasible plan to pay such outstanding balance with your compromise.
> Once we receive your email in the terms above mentioned, we can schedule a call to discuss on the continuance of this matter.

51.     Mr. Cunningham responded, and the Parties organized a call for that week. Ultimately, however, Arizona USA did not become current on its invoices.

52.     Plaintiff sent Defendant monthly or bi-monthly invoices throughout 2021, reflecting additional work Basham had to do, in accordance with its ethnical duties, to avoid prejudicing Arizona USA's legal rights in light of Barbachano's challenges to the unfavorable

rulings against him.  Each email transmitting a new invoice also reminded Mr. Cunningham and Mr. Menashi of the outstanding balance and requested payment of this balance.

53.    As of today, the amount Arizona USA owes Basham under outstanding invoices is **$441,122.90**.[12]

54.    **Exhibit A** to this Complaint is a spreadsheet listing all invoices Basham sent to Arizona USA, and indicating for each invoice the number, date, amount, and payment status. Rows with invoices for which some amount remains outstanding are highlighted in yellow. **Exhibit B** is a compendium of the invoices for which some amount remains outstanding; these invoices are the subject of this Complaint.

**E.    Defendant's Bad Faith Attempt to Avoid Payment That Necessitated This Complaint**

55.    On February 1, 2023, the undersigned counsel sent on behalf of Plaintiff a letter to Defendant (c/o Mr. Cunningham and Mr. Menashi).  The letter demanded payment of the $441,122.90 owed under the outstanding invoices, and attached the relevant invoices.

56.    Mr. Cunningham and Mr. Menashi did not respond to Plaintiff's counsel's letter.

57.    Rather, on February 10, 2023, Juan Villagra sent a letter to the undersigned counsel, on his law firm's letterhead.  His letter stated, "Since the start of this relationship, the parties were and have been Arizona Beverages de México, S. de R.L. de C.V. and Basham, Ringe y Correa, S.C.  The entity to which you have addressed the demand letter is not the proper party in this matter; therefore, I request that any and all communications be addressed to me, as legal representative of ABM [Arizona Mexico]."

---

[12] Of this amount, $7,632.31 consists of amounts invoiced to Arizona Mexico.

58.     Defendant's attempt, through Mr. Villagra, to present Arizona Mexico as the proper and only counterparty in the relationship with Plaintiff can only be ascribed to bad faith.  This is in light of the facts above, particularly:

a.      In 2015, Defendant Arizona USA (through Mr. Cunningham) hired Plaintiff, based on an engagement letter that was addressed to Arizona USA and stated that Arizona USA would receive the bills.

b.      On May 12, 2017, Defendant Arizona USA (through Mr. Cunningham) acknowledged in writing Arizona USA's debt to Plaintiff, and promised to pay it as well as future invoices.

c.      All of Plaintiff's communications concerning its provision of legal services were with Mr. Cunningham and/or Mr. Menashi of Defendant Arizona USA, and they approved the legal strategy.

d.      Plaintiff addressed its invoices to Defendant Arizona USA, and transmitted them in emails to Defendant Arizona USA that were not sent to Mr. Villagra.

e.      Defendant Arizona USA did not object to any of Plaintiff's invoices, paid many of these invoices, and repeatedly acknowledged its debt under the outstanding invoices.

f.      Eugenio Barbachano, the opposing party in the actions for which Plaintiff was hired, considered Plaintiff to be Defendant Arizona USA's legal representation, and reached out directly to Defendant Arizona USA when attempting to settle the actions.

g.      Plaintiff's legal services included helping Defendant Arizona USA's New York-based affiliates in litigation in New York state court.

h.      In that litigation, Defendant's affiliates argued that Arizona Mexico was not a party to the relationship with Barbachano, that the dispute with Barbachano was centered in New York, and that Defendant's closely-held New York affiliates were the targets of Barbachano's legal actions in Mexico and incurred the resulting legal fees.

i.      Defendant Arizona USA instructed Plaintiff to cease communicating with Juan Villagra in 2018, and 64 of the 72 unpaid invoices that are the subject of this Complaint post-date the time at which Juan Villagra, representing Arizona Mexico, was cut-out of the Parties' relationship.

59.      Defendant's bad faith attempt to avoid payment necessitated this Complaint.  It entitles Plaintiff to recover its attorney's fees in this action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

60.      Plaintiff repeats and re-alleges all prior paragraphs.

61.      Plaintiff and Defendant entered into a valid and enforceable agreement by which Plaintiff would provide legal services to Defendant for the benefit of Defendant and its affiliates at specified prices.

62.      Plaintiff provided these legal services to Defendant's satisfaction, including those services resulting in the charges in the invoices for September 2015 through April 2022, and duly rendered these invoices to Defendant.

63.      Defendant has failed to pay these invoices in full, leaving an unpaid principal balance of $441,122.90, which is presently due and owing.

64.      Defendant has breached the agreement by failing to pay its outstanding balance of $441,122.90.

65.     Plaintiff has performed all its obligations under the agreement, and is not, and has never been, in breach thereof.

66.     By reason of Defendant's breaches of the agreement, Plaintiff has been damaged in the amount of $441,122.90, plus interest and costs of collection.

67.     Accordingly, Defendant is liable to Plaintiff for breach of contract in the amount of $441,122.90, plus interest thereon, together with all costs of collection.

### SECOND CAUSE OF ACTION
**(Promissory Estoppel)**

68.     Plaintiff repeats and re-alleges all prior paragraphs.

69.     Plaintiff alleges in the alternative to its breach of contract claim, that Plaintiff is entitled to recover under the doctrine of promissory estoppel.

70.     On May 12, 2017, Defendant made an unambiguous written promise to Plaintiff, which it reiterated in several telephone conversations.

71.     Defendant promised to pay Plaintiff the amounts owed for past legal services Plaintiff had rendered to Defendant, and to pay Plaintiff all future amounts owed arising out of Plaintiff's ongoing legal representation.

72.     Defendant was in a position to fully perform, fulfill and carry out the terms and conditions of the promise it made, because Defendant (a billion-dollar entity) had sufficient resources, closely followed and directed Plaintiff's provision of legal services, and paid for some of these services.

73.     It was foreseeable that Defendant's promise would cause or induce Plaintiff to act in reasonable reliance on Defendant's promise.

74.     Plaintiff acted in accordance with all instructions and requests made to it by Defendant.

75.     In reliance on Defendant's promise, Plaintiff provided legal services to Defendant for years, and achieved Defendant's objective of successfully resisting Barbachano's various complaints and actions.

76.     As a result of Plaintiff's reliance, Plaintiff suffered a substantial and detrimental change in position.  It expended years of uncompensated labor to Defendant, at the expense of time it could have dedicated to other clients who would have timely paid for Plaintiff's services.

77.     As a result, Plaintiff has suffered damages in the amount of $441,122.90, plus interest thereon, together with all costs of collection.

### THIRD CAUSE OF ACTION
**(Account Stated)**

78.     Plaintiff repeats and re-alleges all prior paragraphs.

79.     Plaintiff alleges in the alternative to its breach of contract claim, that Plaintiff is entitled to recover under the doctrine of account stated.

80.     On May 12, 2017, Defendant acknowledged an amount it owed to the Plaintiff for legal services rendered and invoices sent by Plaintiff as of that date.

81.     Defendant subsequently received Plaintiff's invoices for May 15, 2017 through April 21, 2022, and held them without objection.

82.     Defendant has failed to pay $441,122.90 that is presently due and owing under the invoices.

83.     Accordingly, true and just accounts have been stated as between Defendant and Plaintiff, and Defendant is liable to Plaintiff on the accounts stated in the amount of $441,122.90, plus interest thereon, together with all costs of collection.

### FOURTH CAUSE OF ACTION
**(Quantum Meruit)**

84.     Plaintiff repeats and re-alleges all prior paragraphs.

85.    Plaintiff alleges in the alternative to its breach of contract claim, that Plaintiff is entitled to recover under the doctrine of quantum meruit.

86.    From September 2015 through April 2022, Plaintiff performed legal services in good faith for Defendant at Defendant's request.

87.    Defendant accepted these legal services, by, *inter alia*: acknowledging the amount it owed as of May 12, 2017; failing to object to Plaintiff's invoices issued after that date; paying part of the amount owed under these invoices; asking that Plaintiff continue to provide legal services; and directing Plaintiff to take certain steps in the litigations as part of the provision of legal services.

88.    Plaintiff had an expectation of compensation for the legal services it performed.

89.    The reasonable value of Plaintiff's legal services is established by the hourly rates and time spent as calculated on Plaintiff's invoices.

90.    Accordingly, Plaintiff is entitled to the reasonable value of its services, which is $441,122.90, plus interest thereon, together with all costs of collection.

### FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

91.    Plaintiff repeats and re-alleges all prior paragraphs.

92.    Plaintiff alleges in the alternative to its breach of contract claim, that Plaintiff is entitled to recover under the doctrine of unjust enrichment.

93.    Defendant has received a benefit, namely high-quality legal services.  The benefit is specific and direct to Defendant because Defendant itself requested these services from Plaintiff. Furthermore, Plaintiff's legal services in Mexico served as the foundation for arguments that Defendant's closely-held affiliates made in litigation against Barbachano in New York; Plaintiff advised Defendant on these arguments for the New York litigation; and Defendant's affiliates

explicitly represented that Barbachano's legal actions in Mexico targeted the Arizona entities in New York, including Defendant.

94.     This benefit came at Plaintiff's expense, as Plaintiff performed the legal services for Defendant and did not receive full compensation.

95.     Equity and good conscience require restitution to Plaintiff of the reasonable value of the services it provided to Defendant.

96.     Accordingly, Plaintiff is entitled to $441,122.90, plus interest thereon, together with all costs of collection.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands entry of judgment in its favor and against Defendant as follows:

97.     That on any of the five causes of action this Court enter judgment against Defendant in the amount of $441,122.90, plus interest thereon, together with all costs of collection;

98.     That Plaintiff be awarded all costs of this action, including attorney's fees and expenses; and

99.     That Plaintiff receives such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

Respectfully submitted,

Dated: September 18, 2023

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**

 */s/ Tara J. Plochocki*
Tara J. Plochocki (NY Bar No. 5359054)
Alexander Bedrosyan (NY Bar No. 5492137)
The Chrysler Building
405 Lexington Ave, 64th Floor
New York, NY 10174
Tel: (212) 826-7001
Fax: (212) 826-7146
Tara.Plochocki@lbkmlaw.com
Alexander.Bedrosyan@lbkmlaw.com

*Attorneys for Plaintiff*