UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASHAM, RINGE Y CORREA, S.C.<br><br>      Plaintiff,<br><br>  -against-<br><br>ARIZONA BEVERAGES USA LLC<br><br>      Defendant. | Case No. 23-cv-8223 (NSR) |

**MOTION FOR LEAVE TO AMEND COMPLAINT**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................... 3

**INTRODUCTION** ..................................................................................................................... 6

**RELEVANT BACKGROUND** ................................................................................................ 7

    I.   Basham enters engagements with Arizona Mexico and Arizona USA ............................... 7
    II.  Procedural Background ......................................................................................................... 9
    III. The Parties Have Submitted Two Proposed Scheduling Orders – Neither Was Operative 12

**MEMORANDUM OF LAW** .................................................................................................. 13

    I.   The Court Should Grant Leave to Amend because Amendment is not Futile .................... 14
    II.  The Proposed Amendments Do Not Prejudice Any Parties And Is Timely ....................... 16

**CONCLUSION** ....................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Block v. First Blood Associates*,
  988 F.2d 344, 350 (2d Cir. 1993) .................................................................................. 12

*Bradkin v. Leverton*,
  26 N.Y.2d 192, 309 N.Y.S.2d ........................................................................................ 15

*Chen v Good Chows Inc.*,
  2016 US Dist LEXIS 61691 ........................................................................................... 15

*Foman v. Davis*,
  371 U.S. 178, 182 (1962) ............................................................................................... 12

*Johnson v. Bryson*,
  851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012) .................................................................... 12

*Labajo v. Best Buy Stores, LP.*,
  478 F.Supp.2d 523, 531 (S.D.N.Y. 2007) ..................................................................... 13

*Phillips v. Reed Group, Ltd.*, 955 F. Supp.
  2d 201, 215 (S.D.N.Y. 2013) ................................................................................... 13, 14

*Ricciuti v. New York City Transit Authority*,
  941 F.2d 119, 123 (2d Cir. 1991) ................................................................................... 12

*Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*,
  493 F. Supp. 3d 64, (E.D.N.Y. 2020) ............................................................................ 14

*Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*,
  283 F.R.D. 142, 147 (S.D.N.Y. 2012) ............................................................... 12, 13, 16

*Williams v. Citigroup, Inc.*,
  659 F.3d 208, 214 (2d Cir. 2011) ................................................................................... 12

**Rules**

Fed. R. Civ. P. 15 .................................................................................................................. 12

Fed. R. Civ. P. 16 .................................................................................................................. 13

Fed. R. Civ. P. 21 .................................................................................................................. 12

Plaintiff Basham, Ringe y Correa, S.C. ("Plaintiff" or "Basham"), by its attorneys Sequor Law, P.A., moves under Federal Rule of Civil Procedure 15,[1] for leave to amend its Complaint (hereinafter, the "Motion") to assert additional causes of action and to name Arizona Beverages de México, S. de RL de CV ("Arizona Mexico"), Beverage Marketing USA, Inc. ("BMU"), Arizona International, LLC ("Arizona International"), and David K. Menashi ("Mr. Menashi," together with Arizona Mexico, BMU, and Arizona International, the "Proposed Defendants") as additional defendants. As explained below, the Complaint seeks compensation for legal representation provided to the Arizona Beverages entities over the course of seven (7) years. The initial Complaint named only Defendant Arizona USA, LLC ("Defendant" or "Arizona USA"), as this was the entity that Plaintiff believed had contracted for its services. However, during the conferrals and exchange of letters regarding discovery, it became clear that Defendant intends to evade liability by disclaiming both responsibility for and control over the acts of its own officers and corporate agents. Moreover, in a letter dated September 17, 2024, Defendant for the first time claimed that Arizona Mexico "is not a parent, subsidiary, or affiliated entity to Defendant." This statement was so drastically inconsistent with the sharing of managers and corporate headquarters, the joint operations, and the publicly available information regarding the Arizona Beverages conglomerate that it required serious investigation and analysis by Plaintiff.

To ensure that Defendant cannot hide behind abstruse corporate structures, Plaintiff seeks to add the Proposed Defendants, each of whom benefitted from Plaintiff's services. Each of the

---

[1] A proposed Amended Complaint is attached as Exhibit 1 hereto and a redline of the Amended Complaint against the original Complaint is attached as Exhibit 2, in compliance with Local Rule 15.1.

Proposed Defendants was a named defendant in one or more of the proceedings that Basham successfully handled in Mexico. In addition, BMU and Arizona International stated on the record before the New York state Supreme Court in Nassau County that they were the targets of the litigation handled by Basham and that they were "forced to incur legal expenses" in connection therewith. It is the prerogative of this Court to ensure that these beneficiaries are now forced to *pay* those legal expenses. To avoid further gamesmanship, the Amended Complaint adds to its claims for quantum meruit and unjust enrichment each of the Proposed Defendants who benefitted from Plaintiff's services. The Amended Complaint also delineates between the $7,632.32 in invoices addressed to Arizona Mexico and the $433,490.59 in invoices addressed to Arizona USA, in both the breach of contract and account stated claims.[2]

---

[2] The causes of action set forth in the Amended Complaint remain the same as in the initial complaint, but the amendment reflects new information gleaned during the discovery process about the various legal entities acting under the Arizona Beverages trade name. The amendment articulates that these entities are acting as alter egos of one another and asks the Court to pierce the corporate veil.

**INTRODUCTION**

Justice requires that this Motion be granted because Defendant Arizona USA is part of a complex and opaque corporate group that seeks to deprive Plaintiff of a remedy. The Proposed Defendants acted in concert from a joint headquarters at One Arizona Plaza in Woodbury, New York, under the control of the same officers and agents, and under the ambiguous "AriZona Beverages" trade name. Now Arizona USA claims that corporate separation shields it from liability and from critical discovery obligations in this case.

Defendant Arizona USA incorrectly claims that the parties "stipulated" to certain deadlines and that the Motion is untimely thereunder. Secondly, Arizona USA incorrectly asserts that Plaintiff was on notice of the facts necessary to amend the complaint since February 2023 because of Arizona Mexico's response to a pre-litigation demand letter which Plaintiff had sent to Arizona USA or, alternatively, since November 17, 2023, the date of Arizona USA's answer. These arguments fail because there was no such stipulation, the Motion was timely, and it was not until September 17, 2024 that Defendant took the position that Arizona USA was not a parent of, subsidiary to, or affiliated entity with Arizona Mexico. Since learning this new and material information, Plaintiff has diligently investigated the corporate filings of the Arizona Beverages companies and analyzed the available causes of action and the parties potentially liable thereunder. As explained in more detail below, the interests of justice and Plaintiff's diligent actions establish good cause to justify permitting Plaintiff to amend its Complaint to assert claims against the Proposed Defendants.

**RELEVANT BACKGROUND**

**I.      Basham enters engagements with Arizona Mexico and Arizona USA**

Basham began its relationship with Arizona Mexico on March 5, 2009. As reflected in Basham's client intake documents, Arizona Mexico was a Mexican company located in Mexico City, Mexico, with whom Plaintiff would communicate in Spanish and transact in Mexican Pesos. Arizona Mexico's client number was 018145, and it was classified as part of the 'business group' (*grupo empresarial*) named "Arizona Beverages Group." From 2009 until 2015, Basham issued invoices to Arizona Mexico in Mexico City.

On August 15, 2015, Basham opened a client file for Arizona USA, within the Arizona Beverages Group portfolio, under the trade name appearing on all of the signature blocks and documents provided by the new client, "Arizona Beverages." Basham's records reflect that Arizona USA was an American company located in New York, New York, with whom Basham would communicate in English and transact in U.S. Dollars. Arizona USA's client number was 019573. From 2015 through 2022, Basham primarily issued invoices to New York and mainly received instruction from Messrs. Cunningham and Menashi, whom Basham knew to be officers and agents of Arizona USA. Basham believed that Arizona USA was the controller or parent of Arizona Mexico, and indeed Arizona USA acted as such. For example, though Mr. Villagra was the sole agent of Arizona Mexico, the fiscal strategy was authorized and overseen by the directors of Arizona USA; Mr. Villagra acted for Arizona Mexico, but he was executing the directions of Messrs. Menashi and Cunningham.

At discrete and various times, and only ever at the direction of Messrs. Cunningham and Menashi, Basham would invoice Arizona Mexico for certain legal services. For the entire time which Basham rendered the legal services at issue, Basham believed that Arizona USA and

7

Arizona Mexico enjoyed a parent/subsidiary relationship and did not recognize—nor did Arizona USA indicate—any meaningful distinction between the two entities.

Indeed, Plaintiff's good-faith belief is underscored by the fact that on February 1, 2023, counsel for Basham sent a letter to Messrs. Cunningham and Menashi, on behalf of Arizona USA, demanding payment of outstanding invoices issued to **both** Arizona USA and Arizona Mexico, in the amount of $441,122.90 (the "Demand Letter"). This sum reflected the combined debt owed by the Arizona Beverages Group. Arizona USA never responded to the Demand Letter. However, on February 10, 2023, Juan Villagra responded to the Demand Letter on behalf of Arizona Mexico, and the response did not deny that it was a subsidiary or affiliate of Arizona USA. To the contrary, the fact that Arizona Mexico responded to correspondence sent to Arizona USA—a self-described legally separate entity—reinforced the lack of de facto separation. The response simply claimed, without elaboration or support, that Arizona USA was not the proper party in this matter and asserted that the parties to the relationship were always Arizona Mexico and Basham.

This self-serving and conclusory response to the Demand Letter did not alter Basham's perception of its seven-year attorney client relationship with Arizona USA. Upon review of the transactions and relevant documents, Basham could not agree with Arizona Mexico's position for a myriad of reasons. For example, Basham opened a new client matter number for Arizona USA in 2015, communicated with Messrs. Cunningham and Menashi in English, and traveled to New York as a part of rendering legal services. These facts support Basham's good-faith belief that it was engaged by Arizona USA. Moreover, Basham issued invoices to Arizona USA in U.S. Dollars, and the majority of payments received in this matter were also in U.S. Dollars. Additionally, Basham's good-faith belief that Arizona USA was the parent company of the Proposed Defendants was bolstered by the fact that Basham rendered legal services in actual and threatened proceedings

which did not identify Arizona USA, but over which Arizona USA, through Messrs. Cunningham and Menashi, oversaw and authorized implementation of various legal strategies and defenses. For those reasons, Basham decided to commence proceedings for the recovery of unpaid legal fees in New York and opted to name Arizona USA as the sole Defendant.

### II. **Procedural Background**

On September 18, 2023, Plaintiff brought this action alleging breach of contract, promissory estoppel, quantum meruit, and unjust enrichment against Defendant Arizona USA. In that pleading, Basham alleges that it contracted with Arizona USA to provide legal services to the Proposed Defendants, each of which Basham understood to be a subsidiary of Arizona USA. Arizona USA did not move to dismiss the Complaint but filed an answer and affirmative defenses on November 17, 2023. The answer included a number of general denials but does not use the word "subsidiary" or "affiliate" anywhere. The answer denied that there was an agreement between Basham and Arizona USA, but admits the existence of the emails, invoices, and other documents relied upon by Basham. While Defendant put a new spin on these documents, it seemed little more than legal posturing.

Having consistently operated under the trade name "Arizona Beverages" in their correspondence, and accepted invoices addressed in the same manner to their New York address, agents of the Defendant had led Plaintiff to believe for seven years that it was dealing with Arizona USA, acting as controller and agent for Arizona Mexico. Plaintiff knew that, for tax purposes, receipts had to be made out to Arizona Mexico, such that this was not new information. Moreover, the Answer did not address the difference between the invoices addressed to Defendant under its trade name "Arizona Beverages" and sent to New York and the invoices for services relevant only to Arizona Mexico, which were specifically addressed to Arizona Mexico and sent to its address

9

and agent in Mexico. That difference underscores Plaintiff's good-faith belief that, while its services benefitted a variety of Arizona Beverage companies, its contract was with Arizona USA.

On February 15, 2024, Basham served Arizona USA with Plaintiff's First Requests for Production (the "Requests") and Plaintiff's First Set of Interrogatories (the "Interrogatories," together with the Requests, the "Written Discovery"). On April 24, 2024, Arizona USA responded to the Written Discovery. *See* Defendant's Objections and Response to the Written Discovery, attached as **Composite Exhibit 3**. Notably, the responses objected to discovery seeking information or documents pertaining to Arizona Mexico, but the responses did not assert a lack of subsidiary or affiliate relationship. It was not until an exchange of letters in the meet and confer process that this assertion was first raised. On August 28, 2024, with an intent toward advancing this case, the undersigned counsel sent a letter to counsel for Arizona USA responding to the objections asserted and describing various deficiencies in Arizona USA's responses (the "Discovery Deficiency Letter").

Counsel for Arizona USA responded to Plaintiff's Discovery Deficiency Letter on September 17, 2024. *See* "Defendant's Discovery Letter," dated September 17, 2024, attached hereto as **Exhibit 4**. In Defendant's Discovery Letter, Arizona USA admitted that Arizona Mexico was a plausible party to the instant proceedings and amended certain responses to the Written Discovery. Ex. 4, at 2. Most notably, the Defendant's Discovery Letter claimed that "Arizona Mexico is a distinct entity from Defendant and is not a parent, subsidiary, or affiliated entity to Defendant." *Ibid*. At a meet and confer between the Parties on September 25, 2024, counsel for Arizona USA maintained that there was no overlapping corporate ownership structure between Arizona USA and Arizona Mexico. After years of dealing with officers of Arizona USA and

10

providing legal services to the Proposed Defendants, this was the first time that Arizona USA had asserted that it was not even "related" to Arizona Mexico.

These new allegations required the complaint to be amended to demonstrate how the companies operating under the Arizona Beverages banner functioned as a single entity, sharing corporate directors and a corporate headquarters, where Arizona Mexico was an undercapitalized subsidiary, or in fact it was a mere sham. Moreover, Arizona USA controls the @drinkarizona.com domain used by every agent of all of the Arizona Beverage entities. According to its terms of service, the website www.drinkarizona.com is operated by Arizona USA. That website states that Arizona Beverages has been family-owned & operated since 1992 by a single family:



In the four months that followed Defendant's material clarification, counsel for Plaintiff obtained and reviewed the publicly available corporate records of the Defendant and each of the Proposed Defendants, and performed other diligence to revise the allegations and causes of action described in the proposed Amended Complaint. *See* Ex. 1. The public corporate records do not evidence independent and unaffiliated corporate entities. To the contrary, the corporate records

show that Mr. Menashi was an officer of several Arizona Beverage entities, including Arizona Mexico and BMU. All the Proposed Defendants had the same corporate headquarters.

### III. The Parties Have Submitted Two Proposed Scheduling Orders – Neither Was Operative

In accordance with this Court's case management orders, on December 11, 2023 and on November 25, 2024, the parties submitted a Civil Case Discovery Plan and Scheduling Order. Neither of these orders were signed by the Court. Neither of these orders contemplated a contested motion for leave to amend pleadings. When the parties conferred in November 2024 regarding the second proposed scheduling order, Arizona USA did not argue that the time to join additional parties or to amend the pleadings had already passed. Instead, the parties selected dates shortly after the holidays, such that, under the proposed scheduling order, the "Joinder of additional parties must be accomplished by January 3, 2025" and "Amended pleadings may be filed until January 15, 2025." On January 2, 2025, Plaintiff's counsel emailed Defendant's counsel, highlighting the ambiguity of the deadlines, given that joining additional parties requires an amendment to the complaint. As such, Plaintiff intended to both join additional parties and file an amended complaint by January 15, 2025. *See* Email to Defendant's Counsel, attached hereto as **Exhibit 5.** Not contemplating any opposition to an amendment served in compliance with the jointly proposed scheduling order, Plaintiff served the proposed amendment on the agreed deadline.

**MEMORANDUM OF LAW**

A party may amend its complaint with leave of court, and a court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has explained:

> [T]his mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted).

Where the amendment seeks to join a new defendant, Federal Rule of Civil Procedure 21 permits adding a party "at any time, on just terms." Fed. R. Civ. P. 21. "However, that creates no additional obstacle, as the 'showing necessary under Rule 21 is the same as that required under Rule 15(a)(2).'" *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.,* 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (quoting *Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012)). Consequently, a court has discretion to deny leave to amend where the proposed amendment would be futile or where it would result in prejudice to the opposing parties. *Williams v. Citigroup, Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (reversing order denying post judgment motion for leave to amend complaint). Amendment is futile if the proposed amendment could not survive a motion to dismiss. *See Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir. 1991) (vacating dismissal of complaint where amendment was improperly denied). Prejudice arises when the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993) (affirming decision granting leave to amend answer

four years after complaint was filed to include statute of limitations defense and finding that "the time, effort and money [] expended in litigating" the case was not sufficiently prejudicial).

Where a pretrial scheduling order restricting the right to amend has previously been entered, such order "may only be modified for good cause." Fed. R. Civ. P. 16(b)(4). "Good cause is demonstrated by a showing that despite its having exercised diligence, the applicable deadline could not have been reasonably met by the plaintiff." *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.,* 283 F.R.D. at 147 (concluding that it was the court's scheduling order and not the parties' agreed schedule that triggered application of "good cause" standard).

I. **The Court Should Grant Leave to Amend because Amendment is not Futile**

Plaintiff has stated cognizable claims against Proposed Defendants who directed and received the benefit of Plaintiff's services. The proposed amendment is not futile. To show that proposed claims are not futile, a plaintiff "is not required to provide detailed factual allegations in the complaint, but must assert more than labels and conclusions and more than a formulaic recitation of the elements of a cause of action." *Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 215 (S.D.N.Y. 2013). Where the parties dispute whether there is an enforceable written contract, the Federal Rules of Civil Procedure allow a plaintiff to plead claims for breach of contract and, alternatively, claims for quantum meruit and unjust enrichment. *See Labajo v. Best Buy Stores, LP.,* 478 F.Supp.2d 523, 531 (S.D.N.Y. 2007). In *Phillips*, the Court determined that the plaintiff properly asserted claims for breach of contract, quantum meruit, promissory estoppel, and unjust enrichment because that plaintiff alleged that nearly all of the alleged conduct was performed by the identified parties. *Phillips*, 955 F. Supp. 2d at 238. Moreover, because the parties in *Phillips* did not disagree over the alleged conduct, only on behalf of whom certain individuals were acting at certain times, this Court found that Plaintiff adequately pled claims against all the defendants. *Ibid.*

14

Here, Plaintiff seeks to amend the Complaint to allege claims of breach of contract, account stated, and promissory estoppel against Arizona Mexico, and to assert quantum meruit and unjust enrichment claims against the remaining Proposed Defendants. Arizona USA does not dispute that the legal services at issue occurred, nor can it deny that the Proposed Defendants were named respondents in the Mexican proceedings handled by Plaintiff. Indeed, Arizona USA expressly acknowledges the potential that Arizona Mexico is a proper party to this litigation; it disputes whether any of the solvent entities in its corporate group may be added to the complaint. *See* Ex. 5, at 2 ("The only conceivable party to be added here is Arizona Mexico, as the fundamental dispute here is Plaintiff's engagement by Arizona Mexico.").

Accordingly, the facts here are akin to those in *Phillips*, where the court granted leave to amend for the plaintiff to assert contractual, equitable, and alter ego claims against various additional defendants because the only dispute was the legal character of the conduct alleged. *Phillips*, 955 F. Supp. 2d at 247. As such, the Court should find that Plaintiff's proposed amendments asserting claims against the Proposed Defendants are not futile because "construed liberally… Plaintiff's allegations suggest nearly all of the alleged conduct was performed by" the Proposed Defendants, urging the conclusion that "the claims that Plaintiff has adequately pled against [Arizona USA and Arizona Mexico] also represent—at least at this stage in the litigation—viable claims against the [Proposed Defendants]." *Id.* at 238.

Furthermore, the equitable claims asserted against Mr. Menashi are not futile. Courts within the Second Circuit have noted that a corporate officer may be held personally liable for quasi-contractual and equitable claims. *See Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, (E.D.N.Y. 2020) (noting that the defendants were not entitled to judgment as a matter of law on the quasi-contractual promissory estoppel and unjust enrichment claims against

15

a corporate officer); *see also Bradkin v. Leverton*, 26 N.Y.2d 192, 309 N.Y.S.2d 192, 257 N.E.2d 643 (N.Y. 1970) (examining New York law and finding a corporate officer to be individually liable on the plaintiff's quasi-contractual unjust enrichment claim).

Arizona USA incorrectly states that adding Mr. Menashi as a defendant is an improper method of piercing the corporate veil. Ex. 4, at 2-3. What Arizona USA overlooks, though, is that the Amended Complaint does not seek to impose individual liability by piercing the veil of any corporate entity or by virtue of his representative capacity of any corporate entity. Instead, the equitable claims against Mr. Menashi assert that Plaintiff rendered legal services which directly benefitted Mr. Menashi, who was individually named in certain criminal proceedings, and that justice and equity require that Mr. Menashi compensate Basham for the services so provided and the benefit he received, regardless of the liability which corporate entities receive or escape.

## II.     The Proposed Amendments Do Not Prejudice Any Parties And Is Timely

The Proposed Amendments are not prejudicial because they arise out of the same facts and claims already in litigation. In *Chen v Good Chows Inc.*, the court found that the proposed amendments would not require "a significant amount of additional resources or significantly delay these proceedings," as the claims against the new defendants were identical to those against the existing defendants and therefore "much of what these additional defendants might otherwise have sought in discovery has already been obtained by the existing Defendants." *Chen v Good Chows Inc.*, 2016 US Dist LEXIS 61691, at *6 [SDNY May 3, 2016, No. 14cv5960-FM].

Here, the Amended Complaint arises out of the same facts already raised in the initial Complaint, includes the same causes of action, and therefore involves much of the same discovery already sought by Arizona USA. Furthermore, Plaintiff can issue non-party subpoenas to the Proposed Defendants, such that Plaintiff's discovery will not be delayed by the proposed amendment. Furthermore, the amendment was necessitated by Arizona USA's belated assertion

16

that it is not a corporate affiliate or related to Arizona Mexico. All of the Proposed Defendants have been on notice of this action since its inception, considering that they share corporate officers, employees, and a headquarters. Considering that Martin Cunningham serves as New York registered agent for all the Proposed Defendants and Arizona USA, through him, all of the Proposed Defendants are aware of the action.

Finally, Arizona USA's arguments regarding timeliness are misplaced. Arizona USA seeks to enforce an order never entered by this Court. *See Soroof Trading,* 283 F.R.D. at 147 (noting that "the purported agreement by which Soroof seeks to establish timeliness was never adopted by the court"). Consequently, Plaintiff need not establish good cause for this Court to grant the Motion. However, even if Court determines that the proposed scheduling order was operative, Plaintiff has good cause to seek amendment at this time. Plaintiff has diligently pursued information through public records and discovery regarding the Arizona Beverages conglomerate. However, other than a statement on its website that they are owned by the Vultaggio family, these companies do not publicly disclose their ownership structure, and Arizona USA does not even disclose any of the names of its officers in its filings with the Division of Corporations. Since Arizona USA's recent assertions that it is in no way affiliated or connected with any of the Proposed Defendants, Plaintiff's prompt investigation, follow up with Defendant's counsel, and efforts to amend the Complaint demonstrate good cause.

## **CONCLUSION**

Accordingly, Plaintiff respectfully requests that this Court grant its Motion for leave to amend the Complaint to add: Beverage Marketing USA, Inc., Arizona International, LLC, and Arizona Beverages de México, S. de RL de CV, as reflected in the proposed First Amended Complaint attached as Exhibit 1 to this Motion.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: February 24, 2025 | SEQUOR LAW, P.A. |

*Nyana Abreu Miller*
Tara J. Plochocki (NY Bar No. 5359054)
650 Massachusetts Avenue, N.W.,
Suite 600
Washington, D.C., 20001
Tel: (305) 372-8282
tplochocki@sequorlaw.com
*Attorney for Plaintiff*

Nyana Abreu Miller
FL Bar No.: 92903
Templeton N. Timothy
FL. Bar No.: 1025172
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
nmiller@sequorlaw.com
ttimothy@sequorlaw.com
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
*Admitted Pro Hac Vice*