**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BASHAM, RINGE Y CORREA, S.C.,

                    Plaintiff,

    -against-

ARIZONA BEVERAGES USA LLC,

                  Defendant.

Case No.: 23-cv-8223 (NSR)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR LEAVE TO AMEND COMPLAINT**

**CUDDY & FEDER LLP**
*Attorneys for Defendant*
445 Hamilton Ave, 14th Floor
White Plains, New York 10601
(914) 761-1300

i

## Table of Contents

Page

Table of Authorities ....................................................................................................... ii

Preliminary Statement ...................................................................................................... 1

Argument .......................................................................................................................... 3

    I.      The Court Should Deny Leave for Plaintiff to
            Amend Its Complaint ..................................................................................... 3

        A.  Plaintiff Knew Over Two Years Ago That It Had
             Sued the Wrong Party, Yet Sat on Its Hands Without
             Reason or Cause to Do So, Thereby Creating Undue
             Prejudice with This Belated Motion ................................................... 4

        B.  Plaintiff's Motion Is Futile as to the Proposed Fifth,
             Sixth, and Seventh Causes of Action Asserting Quasi-Contract
             Claims that are Barred by Law ...................................................... 11

             1.  Under New York Law, the Proposed Fifth, Sixth, and
                  Seventh Causes of Action are Legally Barred as to All
                  Parties Because Claims in Quasi-Contract Do Not Lie
                  Where, as Here, a Contract Exists Governing the
                  Subject Matter at Issue ............................................... 11

             2.  The Proposed Fifth, Sixth, and Seventh Causes of Action
                  Are Also Barred as to the Futility Defendants Under
                  Plaintiff's Conclusory Veil-Piercing and Alter Ego
                  Theories of Liability ................................................... 14

Conclusion ...................................................................................................................... 17

Certificate of Service ...................................................................................................... 18

i

6384040.v1

## Table of Authorities

**Cases**                                                     **Page**

*A & V 425 LLC Contracting Co. v. RFD 55th St. LLC*,
 15 Misc.3d 196 (Sup. Ct. N.Y. Cnty. 2007)............................................................ 13

*Blanco v. Success Acad. Charter Schs., Inc.*,
 722 F. Supp. 3d 187 (S.D.N.Y. 2024)................................................................ 11

*Bonanni v. Straight Arrow Publishers, Inc.*,
 133 A.D.2d 585 (1st Dep't 1987)..................................................................... 14

*Bradkin v. Leverton*,
 26 N.Y.2d 192 (1970) ............................................................................. 13

*Chen v. Good Chows, Inc.*,
 2016 WL 3144396 (S.D.N.Y. May 3, 2016)........................................................... 10

*City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Ryanair Holdings PLC*,
 2022 WL 4377898............................................................................ 7, 9, 11

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
 70 N.Y.2d 382 (1987) ............................................................................. 12

*Credit Suisse First Boston LLC v. Coeur d'Alene Mines Corp.*,
 2004 WL 2903772 (S.D.N.Y. Dec. 15, 2004)........................................................... 9

*Dixon v. United States*,
 2024 WL 216733 (E.D.N.Y. Jan. 19, 2024)........................................................... 7, 9

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
 228 F.R.D. 508, 512 ............................................................................... 14

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
 902 F.3d 132 (2d Cir. 2018)........................................................................ 11

*Evans v. Syracuse City Sch. Dist.*,
 704 F.2d 44 (2d Cir. 1983)......................................................................... 5

*Farricker v. Penson Dev., Inc.*,
 513 F. App'x 46 (2d Cir. 2013)..................................................................... 7, 9

*Feigen v. Advance Capital Mgmt. Corp.*,
 150 A.D.2d 281 (1st Dep't 1989).................................................................... 12

6384040.v1

*Ferring B.V. v. Allergan, Inc.*,
    4 F. Supp. 3d 612 (S.D.N.Y. 2014) ....................................................................... 14

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................................... 8

*Gartner v. Snyder*,
    607 F.2d 582 (2d Cir. 1979) ................................................................................. 16

*In re Int. Rate Swaps Antitrust Litig.*,
    2018 WL 2332069 (S.D.N.Y. May 23, 2018) ........................................................ 8

*Labajo v. Best Buy Stores*, LP,
    478 F. Supp. 2d 523 (S.D.N.Y. 2007) ................................................................... 13

*Lucente v. IBM Corp.*,
    310 F.3d 243 (2d Cir. 2002) ................................................................................. 11

*Morris v. N.Y. State Dep't of Taxation & Fin.*,
    82 N.Y.2d 135 (1993) ........................................................................................... 15

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
    225 F. Supp. 3d 201 (S.D.N.Y. 2016) ................................................................... 13

*Murdaugh v. City of New York*,
    2011 WL 1991450 (S.D.N.Y. May 19, 2011) ...................................................... 11

*Phillips v. Reed Grp., Ltd.*,
    955 F. Supp. 2d 201 (S.D.N.Y. 2013) ...................................................... 13, 16, 17

*Piechowicz v. Lancaster Cent. Sch. Dist.*,
    2022 WL 22782841 (W.D.N.Y. Jan. 18, 2022) ................................................... 14

*Ridgeline Constructors, Inc. v. Elmira Glass Tech. Corp.*,
    183 A.D.2d 1041 (3d Dep't 1992) ........................................................................ 15

*Sanders v. Thrall Car Mfg. Co.*,
    582 F. Supp. 945 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984) ................. 4

*Schwartz v. Sensei, LLC*,
    2020 WL 5817010 (S.D.N.Y. Sept. 30, 2020) ..................................................... 15

*Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*,
    493 F. Supp. 3d 64 (E.D.N.Y. 2020) .................................................................... 13

iii

*Sly Magazine, LLC v. Weider Publ'ns L.L.C.*,
 241 F.R.D. 527 (S.D.N.Y. 2007) ............................................................... 8, 9

*Solutions Express, Ltd. v. Ashley Furniture Indus., Inc.*,
 2023 WL 2393861 (S.D.N.Y. Mar. 7, 2023) .......................................... 12

*TechnoMarine SA v. Giftports, Inc.*,
 758 F.3d 493 (2d Cir. 2014) ....................................................................... 4

*Terry v. Charitable Donor Advised Fund, L.P.*,
 2024 WL 898907 (S.D.N.Y. Mar. 1, 2024) ............................................. 13

*Thea v. Kleinhandler*,
 807 F.3d 492 (2d Cir. 2015) ..................................................................... 11

*Xiotech Corp. v. Express Data Prods. Corp.*,
 11 F. Supp. 3d 225 (N.D.N.Y. 2014) ....................................................... 16

## **Rules**

Federal Rule of Civil Procedure 15(a) .......................................... 4, 8, 11

Federal Rule of Civil Procedure 21 .................................................... 8

6384040.v1

## PRELIMINARY STATEMENT

This is an action in contract. It is undisputed that in 2015, Plaintiff Basham, Ringe Y Correa, S.C. ("Plaintiff" or "Basham"), a sophisticated law firm based in Mexico, authored a written contract in the form of a retainer agreement (the "Agreement") through which it was engaged to provide legal services to Arizona Beverages de México, S. de RL de CV ("Arizona Mexico"). *See* Plaintiff's proposed amended complaint (the "Proposed Amended Complaint" or "PAC"), ¶¶ 20-21. It is further undisputed that the Agreement expressly provided that Basham was retained to represent Arizona Mexico in an employment lawsuit against Arizona Mexico in the Mexican court system.[1] No other party was referenced in the Agreement. Yet now, Basham seeks to hold no fewer than *four* distinct corporate entities—and an officer of Defendant Arizona Beverages USA LLC ("Defendant," "Arizona USA" or "ABUSA") in his individual capacity— liable for debts incurred by Arizona Mexico under the Agreement. That is not the law. Plaintiff, as a sophisticated law firm that no doubt has drafted hundreds of retainer agreements like the one at issue here, must be held to the terms of the governing contract—i.e., the Agreement—which Plaintiff authored.

The dispute in this action is not whether the Agreement is valid, enforceable, or governs the subject matter of this action for legal fees. It does. In fact, *both* parties concede that is the case. Rather, at issue here is which party engaged Plaintiff pursuant to the governing Agreement. Plaintiff claims Arizona USA and Arizona Mexico did (PAC, ¶¶ 75, 90), whereas Defendant

---

[1] Although pointing to the engagement Agreement (PAC, ¶¶ 21-22) itself, neither the Proposed Amended Complaint nor Plaintiff's Motion for Leave to Amend the Complaint (the "Motion" or "Mot.") provide the Court with a copy of it. A copy of the Agreement is annexed to the Declaration of Joshua E. Kimerling, Esq. (the "Declaration" or "Decl."), submitted herewith, as Exhibit 1.

6384040.v1

claims only Arizona Mexico was the contracting party to the Agreement for legal fees, the subject matter at issue (Answer, ¶¶ 1, 59, 98).

Despite Plaintiff being advised of Arizona USA's position *more than two years ago*, Plaintiff only now files its Motion seeking permission to make wholesale changes to its Complaint (ECF Doc. No. 1, the "Complaint"). *First*, Basham argues that it should be entitled to assert claims in quasi-contract (*see* PAC, Fifth, Sixth, and Seventh Causes of Action) against all defendants— both current and proposed—despite Plaintiff's admission of the existence of a contract (i.e., the Agreement) governing this subject matter. *Second*, Basham seems to suggest that it is entitled to pierce the corporate veil not just of Defendant Arizona USA, but of numerous other proposed corporate defendants, due to (i) an "alter ego" theory of liability that is predicated merely upon conclusory labels and (ii) Basham's own *perception* of Defendant's corporate structure.

The Motion should be denied, however, for several reasons. *First*, it is unduly delayed and prejudicial and will significantly delay the outcome of the case, all grounds that courts—including the Supreme Court—have relied upon to reject motions to amend. *Second*, even if the Motion were not procedurally defective, it should be denied because the amendment is based on legally untenable claims and thus is futile. Specifically, the Fifth, Sixth and Seventh Causes of Action of the PAC asserting quasi-contract claims are altogether precluded by the fact that, as conceded by Plaintiff itself, and as Plaintiff pleads (PAC, ¶¶ 75, 90), the Agreement governs the subject matter of this action for legal fees. Well-settled law provides that where, as here, an agreement governs the subject matter in dispute, quasi-contract claims are precluded not only against the contracting parties, but nonparties as well. And even if the Fifth, Sixth and Seventh Causes of Action were not

2

entirely barred as to all parties (the existing Defendant and the Proposed New Defendants),[2] there would be no valid basis for such claims against the Futility Defendants,[3] which are impermissibly based on a wholly conclusory alter ego theory.

Simply put, Plaintiff drafted the Agreement, which admittedly governs the subject matter at issue here. If Plaintiff intended to hold additional parties liable under the Agreement (or retain the ability to do so), it should have drafted the Agreement accordingly, rather than now—*ten years later*—attempting to do so based on utterly conclusory "piercing" allegations and legally untenable grounds that are barred by the very existence of the Agreement itself. For these reasons, Defendant respectfully submits that the Court should deny the Motion as to Plaintiff's request to amend the Complaint to include the Fifth, Sixth and Seventh Causes of Action.[4]

## **ARGUMENT**

### I.    **The Court Should Deny Leave for Plaintiff to Amend Its Complaint**

Plaintiff's Motion is predicated on an assumption that justice "requires" Plaintiff be given leave to amend the Complaint. Yet Plaintiff ignores multiple grounds that the Supreme Court has held are valid bases on which to deny such leave. Plaintiff has (a) sat on its hands for *over two*

---

[2] As used herein, "Proposed New Defendants" is defined to refer collectively to Arizona Mexico, Beverage Marketing USA, Inc. ("BMU"), Arizona International, LLC ("Arizona International"), and David K. Menashi in his individual capacity ("Mr. Menashi").

[3] As used herein, "Futility Defendants" is defined to refer collectively to BMU, Arizona International, and Mr. Menashi.

[4] While not directly germane to the legal issues before the Court, it is worth noting that documentary evidence refutes Plaintiff's allegations in the Proposed Amended Complaint. For example, (a) the invoices Plaintiff submitted along with the PAC do not name or identify Defendant or any of the other Proposed New Defendants (aside from Arizona Mexico) as responsible for payment under the Agreement, (b) Plaintiff only ever submitted payment receipts to Arizona Mexico (*see* Mot. at 6) (ascribing so-called "tax purposes" as the reason why Plaintiff admits all payment "receipts" were issued solely to "Arizona Mexico," the payor of the invoices), and (c) the first time any suggestion was made that any party other than Arizona Mexico was responsible for payment under the Agreement was in a February 1, 2023 demand letter from Plaintiff to Arizona USA—*eight years* after the fact. That demand letter is annexed to the Declaration as Exhibit 2 and the rejection of it is annexed to the Declaration as Exhibit 3.

6384040.v1

*years* before moving to amend and/or add any parties, and particularly the party (Arizona Mexico) specifically identified in the Agreement for whom Plaintiff was being engaged; (b) unduly prejudiced Defendant by proposing this late amendment at a stage that would (i) cause Defendant (and the Proposed New Defendants) to expend significant additional resources in discovery (and, should this action proceed so far, at trial), and (ii) significantly delay the resolution of this dispute over purportedly unpaid and owing legal fees; and (c) included in the Proposed Amended Complaint claims which do not adequately state claims for relief.[5] For these reasons, the Motion should be denied.

> **A.    Plaintiff Knew Over Two Years Ago That It Had Sued the Wrong Party, Yet Sat on Its Hands Without Reason or Cause to Do So, Thereby Creating Undue Prejudice with This Belated Motion.**

"Leave [to amend] may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). "A plaintiff need not be given leave to amend if it fails to specify … how amendment would cure the pleading deficiencies in its complaint." *Id.* at 505-06 (collecting cases). "Stated simply, a court should exercise its Rule 15(a) discretion liberally to permit amendment of pleadings, except where the rule's salutary objective of encouraging disposition of litigation on the merits is outweighed by equally compelling policy considerations." *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984).

Such is the case here. "While a court may not properly deny an amendment solely on the ground of delay, where, as here, a considerable period of time has passed between the filing of the

---

[5] Defendant concedes that, were the Proposed Amended Complaint not so unduly delayed and prejudicial, Arizona Mexico would be an appropriate party to add to this litigation. In fact, Defendant has told Plaintiff repeatedly, for *more than two years*, that Arizona Mexico is the *only* appropriate party to be a named defendant herein.

complaint and the motion to amend, courts have placed the burden upon the movant to show some 'valid reason for his neglect and delay." *Id.* (citations and internal quotation marks omitted). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (citation and internal marks omitted).

Here, it is undisputed that, more than two years ago, on February 10, 2023, prior to this action, Plaintiff was told that its February 1, 2023 demand letter relating to the purportedly unpaid legal fees at issue herein—sent to Arizona USA—was directed to the wrong party (Declaration, Ex. 3), given that Arizona Mexico is the party that had engaged Plaintiff to provide legal services to Arizona Mexico in a litigation pending against it in Mexico.[6] It is further undisputed that, on November 17, 2023, Defendant filed its Answer in this action (ECF Doc. No. 11, the "Answer"), wherein Defendant made clear that Plaintiff had sued the wrong party, and that the *only* proper party to this action was (and remains) Arizona Mexico. *See* Answer, ¶ 98 ("Plaintiff's claims against ABUSA are barred by documentary evidence, including but not limited to, (i) the draft engagement letter prepared by Plaintiff on or about September 4, 2015, in which Plaintiff does not reference or identify ABUSA, but instead confirms that Plaintiff was being engaged pursuant to a 'request for legal counsel and representation of [Arizona Mexico] in the employment law suit brought by Mr. Eugenio Barbachano Losa, pending before the Federal Labor Board in Mexico City,' in which ABUSA was not a party, (ii) subsequent email communications dated September 9, 2015 regarding the draft engagement letter, in which it was confirmed that the engagement of

---

[6] Plaintiff argues that Arizona Mexico's February 10, 2023 letter, in which it stated that it is a separate entity from Arizona USA and the proper recipient of any demand for payment on purportedly unpaid legal fees rendered to Arizona Mexico, "reinforced the lack of de facto separation" between the two entities. This position is nonsensical. The fact that correspondence was sent pointing out Plaintiff's error in claiming an obligation of a different party does not mean corporate formalities were not followed. If anything, it shows that the first time a demand was made suggesting Arizona USA was responsible for Arizona Mexico's purported debt, it was immediately rejected.

Plaintiff by [Arizona Mexico] was to represent the parties to actions in Mexico filed by Eugenio (Nio) Barbachano, in which ABUSA was not a party ('This will confirm our conversation today in which it was agreed that we have engaged the services of Basham to represent us in the above [Nio Barbachano] matter'); (iii) documentary evidence regarding payment of fees invoiced by Plaintiff, which evidence establishes that at no time was ABUSA identified on any invoice or tendered any payment to Plaintiff for the engagement at issue herein; and (iv) official Valued Added Tax governmental payment receipts filled-out and issued by Plaintiff, which do not identify or mention ABUSA but rather are issued to and in the name of [Arizona Mexico] and addressed to [Arizona Mexico] at its office in Mexico, for payment of various invoices, including (a) Payment Receipt dated August 19, 2016, confirming Plaintiff's acknowledgment of payments only from [Arizona Mexico], not ABUSA, (b) Payment Receipt dated December 19, 2016, confirming Plaintiff's acknowledgment of payments from only [Arizona Mexico], not ABUSA, (c) Payment Receipt dated June 23, 2017, confirming Plaintiff's acknowledgment of payments from only [Arizona Mexico], not ABUSA, and (d) Payment Receipt dated January 20, 2020, confirming Plaintiff's acknowledgment of payments from only [Arizona Mexico], not ABUSA.").

In short, since early February 2023, Plaintiff has been aware that—no matter its erroneous perception of the corporate structure of Defendant and/or Arizona Mexico[7]—it was pursuing payment for services rendered to Arizona Mexico from the wrong corporate entity (Arizona USA). Now, *25 months* later, Plaintiff seeks to haul into court not only Arizona Mexico, but two other distinct corporate entities (BMU and Arizona International) and, most egregiously, an officer of

---

[7] Plaintiff makes no secret that its Motion, and the Proposed Amended Complaint, hinge entirely on "Basham's *perception of* its seven-year attorney client relationship with Arizona USA." Mot. at 5 (emphasis added). But perception is not reality, and neither Plaintiff's Motion nor the Proposed Amended Complaint offers any factual grounding to support this mistaken understanding of the identity of Plaintiff's own client. By contrast, documentary evidence conclusively demonstrates that Arizona Mexico, and *not* Arizona USA (or any of the other Proposed New Defendants), was Plaintiff's client, and the proper party to be sued for any purported failure to pay for legal services rendered to Arizona Mexico. *See* Answer, ¶ 98; *see also* Decl., Ex. 1.

Arizona Mexico *in his individual capacity* (Mr. Menashi) as well. Regardless of Plaintiff's (erroneous) "perception," the only party that (1) retained Plaintiff, (2) paid Plaintiff, and/or (3) received (as the payor) payment receipts from Plaintiff for legal invoices, was Arizona Mexico. All of this was known to Plaintiff long ago, and thus Plaintiff's Motion—made after inordinate delay (*more than two years*) and without satisfactory explanation for said delay—should be denied.

Further, in determining whether a proposed amendment to a pleading would be prejudicial, courts in the Second Circuit must consider whether an amendment would cause defendants to "incur[] additional time and expense to respond to a claim that should have been before the court in the initial complaint[.]" *Farricker v. Penson Dev., Inc.*, 513 F. App'x 46, 48 (2d Cir. 2013). "The need for additional discovery is a possible source of prejudice. But it is not the only source of prejudice from a belated amendment adding a whole new theory of the case." *Dixon v. United States*, 2024 WL 216733, at *2 (E.D.N.Y. Jan. 19, 2024) (citation and internal quotation marks omitted); *see also Farricker*, 513 F. App'x at 48 (affirming denial of leave to amend based on undue prejudice two years *before* close of discovery; holding that courts need not allow amendment to pleading that would impose on defendant(s) "time and expense to respond to a claim that should have" already "been before the court"). "An amendment causes undue prejudice where it would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Ryanair Holdings PLC*, 2022 WL 4377898, at *1 (citation and internal quotation marks omitted) ("*Ryanair*"). As the court in *Ryanair* explained, substantial changes to discovery, such as a "new round of protracted litigation over discovery disputes," constitute undue prejudice in the amendment context:

> Given the breadth of Lead Plaintiff's proposed amendment, granting leave to amend "would require counsel to start negotiating anew the expanded universe of discovery issues"; "would require developing and testing new potential search terms to gauge the utility and burden of each"; and "would require counsel to revisit prior compromises based on the aggregate burdens for [Defendants] in light of the added burdens presented by the amended allegations and extended time period."

*Id.* (quoting *In re Int. Rate Swaps Antitrust Litig.*, 2018 WL 2332069, at *22 (S.D.N.Y. May 23, 2018)).

In addition, consideration of whether to grant leave to amend a complaint where the plaintiff seeks to join additional parties implicates Rule 21. In such cases, courts should adhere to the same standard as afforded under Rule 15. *See, e.g., Sly Magazine, LLC v. Weider Publ'ns L.L.C.*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007).[8] Thus, when a plaintiff seeks to join additional parties, "while '[i]n the absence of any apparent or declared reason … the leave sought should, as the rules require, be freely given,' a court's refusal to grant leave to amend is justified on the grounds of, *inter alia*, undue delay and undue prejudice." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As the court in *Sly Magazine* made clear,

> [o]ften, as here, the concepts of undue delay and prejudice are interrelated. Courts have discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant. The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay[.] Although delay alone, in the absence of a showing of undue prejudice or bad faith, typically provides an insufficient basis for denying a motion to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.

---

[8] The court's decision in *Sly Magazine* is particularly instructive as, in that case, the plaintiff sought to amend to join twelve additional parties to the litigation, all connected to the defendants' distribution chain. *See id.* Here, Plaintiff attempts a similar, yet even more extreme amendment in seeking leave to add multiple distinct corporate entities, as well as an officer of Defendant *in his individual capacity*, in a sweeping shield-piercing effort. The *Sly Magazine* court rightly denied leave to amend; this Court should do the same.

6384040.v1

*Id.* (citations and internal marks omitted). Where joinder would "cause significant further delays in th[e] litigation" and "force Defendants to expend substantial additional resources as a result" of said joinder, undue prejudice results "sufficient to deny Plaintiff leave to file an amended complaint." *Id.* (citing *Credit Suisse First Boston LLC v. Coeur d'Alene Mines Corp.*, 2004 WL 2903772, at *3-4 (S.D.N.Y. Dec. 15, 2004)).

Here, the Proposed Amended Complaint would cause undue prejudice. Indeed, the Motion, on its face, is little more than a request of this Court to permit Plaintiff to conduct a harassing fishing expedition into the irrelevant inner workings of no fewer than *four* distinct corporate entities, only one of which is a named Defendant in this action.[9] The other three, plus Mr. Menashi, will no doubt seek their own discovery of Plaintiff (and be subject to Plaintiff's own, tailored discovery demands). The Proposed Amended Complaint completely rewrites and adds causes of action, adding all of the Proposed New Defendants to claims in quasi-contract for unjust enrichment, promissory estoppel, and quantum meruit. Basham and Arizona USA have already engaged in meet-and-confers, exchanged discovery and deficiency letters regarding same, and held an initial call with the Court, among other discovery-related activities. All of that work will have to be done over in the event the Court approves the Proposed Amended Complaint, because all four of the Proposed New Defendants—along with Arizona USA—will have to expend substantial resources to defend against Plaintiff's specious claims, which will unquestionably expand the "universe of discovery issues." That alone is sufficient grounds to deny the instant Motion. *See, e.g., Farricker*, 513 F. App'x at 48; *Dixon*, 2024 WL 216733, at *2; *Ryanair*, 2022 WL 4377898, at *1; *Sly Magazine*, 241 F.R.D. at 532.[10]

---

[9] Further, as noted above, Defendant Arizona USA is not even the proper entity for Plaintiff to sue here.

[10] Moreover, Plaintiff's explanation of its more than two-year delay in moving to amend its Complaint is uncompelling. It is based on a post-hoc excuse: that Plaintiff (a) did not learn that it had sued the wrong entity until

6384040.v1

Plaintiff's lone cited authority to argue that its Motion would not be prejudicial—*Chen v. Good Chows, Inc.*, 2016 WL 3144396 (S.D.N.Y. May 3, 2016)—is a red herring. In *Chen*, the proposed new defendants had virtually no discovery obligations, so "any further discovery that [would] be required [would] be minimal and [would] not significantly delay th[e] litigation." *Id.* at *2. Further, the Court presupposed that "no new discovery will be necessary." *Id.* Moreover, there was no undue delay at issue in *Chen. See generally id.* None of these is true in this case. Additional discovery would not be "minimal." Rather, the Motion makes plain Plaintiff's unabashed ask to engage in a fishing expedition to discern—through extensive paper discovery and likely numerous depositions from multiple newly-added corporate entities—what they already know: that Plaintiff (i) contracted with Arizona Mexico, (ii) provided legal services to Arizona Mexico, and (iii) was paid by Arizona Mexico, *and only Arizona Mexico*. And here, Plaintiff knew all of the above for nearly two years and sat on its hands for that entire time before even *proposing* to amend its Complaint. *Chen* is inapposite to the case at bar.

As the Second Circuit has repeatedly made clear, the burden is on Plaintiff to demonstrate that its proposed amendment would not be prejudicial, and to provide a satisfactory explanation for its two-plus year delay in moving to amend its Complaint. Plaintiff has done neither. Accordingly, the Motion should be denied.

---

September 2024, and (b) properly spent six months thereafter reviewing corporate filings. The former point is, as noted above, simply false. Plaintiff was told, directly and in writing, in February 2023 that it had issued a demand for payment for its legal services to the wrong entity (Arizona USA). Plaintiff's attempt to shift the timeline to start the clock at unrelated discovery correspondence, Mot. at 7-8, is unavailing; it knew in February 2023 that it had made a demand of the wrong party, and this late change in tack does not excuse its delay. And the latter point is not a reasonable excuse for such an extended delay; review of corporate filings should not take one month, let alone six, let alone two-plus years—and is utterly irrelevant to the delay at issue here. That examination, to the extent it was necessary (it was not), should have been conducted in February 2023.

**B.     Plaintiff's Motion Is Futile as to the Proposed Fifth, Sixth, and Seventh Causes of Action Asserting Quasi-Contract Claims that are Barred by Law.**

As set forth in Point I(A), Plaintiff's Motion should be denied because it is unduly late without a satisfactory explanation and unduly prejudicial to both Defendant Arizona USA and the Proposed New Defendants. But the Motion should also be denied, at least as to the Proposed Amended Complaint's Fifth, Sixth, and Seventh Causes of Action, because those claims are untenable under the law, and thereby "futile" within the meaning of leave to amend law.

"Although under Rule 15(a) … leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." *Murdaugh v. City of New York*, 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011). "'Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim.'" *Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 228 (S.D.N.Y. 2024) (quoting *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018)). "A proposed amendment is futile when it 'would not withstand a motion to dismiss.'" *Ryanair*, 2022 WL 4377898, at *2 (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 496 (2d Cir. 2015)); *see also Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (same).

1.     Under New York Law, the Proposed Fifth, Sixth, and Seventh Causes of Action are Legally Barred as to All Parties Because Claims in Quasi-Contract Do Not Lie Where, as Here, a Contract Exists Governing the Subject Matter at Issue.

Plaintiff's Proposed Amended Complaint (PAC, ¶¶ 75, 90) admits to the Court that there is, in fact, a contract (i.e., the Agreement) governing the subject of the legal fees in dispute in this action. To the extent any terms of the Agreement are in dispute, Plaintiff's Proposed Amended Complaint concedes that it is only as to which party(ies) is bound by the Agreement—Plaintiff argues that, along with Plaintiff, Arizona USA *and* Arizona Mexico were contracting parties (*see*

PAC, ¶¶ 74-82, 89-96), whereas Defendant asserts that the Agreement was between Plaintiff and only Arizona Mexico. But the admitted fact is that both parties acknowledge that the Agreement exists, is enforceable, and governs the subject matter of the legal fees that Plaintiff claims it is owed. As such, the law bars all claims in quasi-contract—i.e., the proposed Fifth, Sixth, and Seventh Causes of Action, as to Defendant and all of the Proposed New Defendants.

There is no dispute that claims in quasi-contract are legally barred under New York law where, as here, a contract exists governing the subject matter at issue. *See, e.g., Solutions Express, Ltd. v. Ashley Furniture Indus., Inc.*, 2023 WL 2393861, at *5 (S.D.N.Y. Mar. 7, 2023) ("New York law precludes recovery for claims of unjust enrichment and quantum meruit where there is a valid, enforceable contract governing the same subject matter.") (citation omitted); *Feigen v. Advance Capital Mgmt. Corp.*, 150 A.D.2d 281 (1st Dep't 1989) ("Unjust enrichment is a quasi contract claim, and '***[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter***.'") (quoting *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987)) (emphasis added). Indeed, decisions of both New York State and federal courts consistently hold that claims for unjust enrichment are precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract. *See, e.g., Solutions Express*, 2023 WL 2393861, at *5 ("the subject matter of Plaintiffs' quasi-contract claims is Defendant's obligation to pay for its telecommunication services. This obligation is directly governed by the Term Agreement," to which Defendant was not a party; thus "[g]iven that the Term Agreement governs Defendant's obligation to pay for the telecommunication services at issue, Plaintiffs['] quasi-contract claims are precluded despite the fact that Plaintiffs were not a party to the Term Agreement.") (citation omitted); *see also Mueller*

*v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) ("Numerous decisions applying New York law have held that an unjust enrichment claim is barred if there is a valid contract governing the subject matter of the dispute, <u>even if one of the parties to the claim is not a party to that contract</u>.") (collecting cases; internal quotation marks omitted; emphasis in original); *Terry v. Charitable Donor Advised Fund, L.P.*, 2024 WL 898907 (S.D.N.Y. Mar. 1, 2024) (citing, *inter alia*, *Mueller*, 225 F. Supp. 3d at 207). "This prohibition against quasi-contractual claims in the face of a written contract applies not only to the parties that are in privity of contract, but also to non-contracting parties as well." *A & V 425 LLC Contracting Co. v. RFD 55th St. LLC*, 15 Misc.3d 196 (Sup. Ct. N.Y. Cnty. 2007) (collecting cases; dismissing as against all defendants claims for unjust enrichment and quantum meruit where contract existed).

Here, Plaintiff asserts the proposed Fifth, Sixth, and Seventh Causes of Action—all claims in quasi-contract—against Defendant and the Proposed New Defendants despite the clear bar under New York law against quasi-contract claims where a contract governing the same subject matter exists.[11] The engagement Agreement, which all parties acknowledge is enforceable, indisputably governs the subject matter of this action, i.e., the legal services rendered by Plaintiff and the payment due therefor. Accordingly, the proposed Fifth, Sixth, and Seventh Causes of

---

[11] This unequivocal bar to quasi-contract claims where a contract exists that governs the subject matter at issue renders Plaintiff's citation to *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 216 (S.D.N.Y. 2013), inapposite, because the basis for the court allowing quasi-contract claims was, unlike the instant case, "the parties disput[ing] the existence of a contract." *See also id.* at 243 (the "parties dispute whether there is an enforceable contract at all"). Plaintiff's citation to *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64 (E.D.N.Y. 2020) supports *Defendant's* position on this issue, not Plaintiff's. *See id.* at 114-16 (holding quasi-contract claims barred where contract governed; "*Since … Danzer asserts a breach of contract claim against Shetel based upon Shetel's purported failure to appropriately compensate him for the services he provided, his quasi-contractual claims against Shetel are precluded*. Accordingly, the branches of the Shetel Parties' motion seeking summary judgment … dismissing Danzer's quasi-contractual claims against them is granted to the extent that the Shetel Parties are granted judgment as a matter of law dismissing Danzer's promissory estoppel, quantum meruit and unjust enrichment claims against Shetel … in their entirety with prejudice.") (emphasis added). And Plaintiff's citation to *Bradkin v. Leverton*, 26 N.Y.2d 192 (1970) is inapposite, as in that case, much like in *Shetel*, "there was no agreement between [the parties], express or implied[.]" *Id.* at 192. So too with respect to Plaintiff's citation to *Labajo v. Best Buy Stores*, LP, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) ("it is far from clear that there was an enforceable contract here"). Not so here, as Plaintiff itself admits the existence of the engagement Agreement yet impermissibly attempts to bring quasi-contract claims.

Action are prohibited under the law and Plaintiff's Motion seeking to include them in the Proposed Amended Complaint should be denied.

2.    <u>The Proposed Fifth, Sixth, and Seventh Causes of Action are Also Barred as to the Futility Defendants Under Plaintiff's Conclusory Veil-Piercing and Alter Ego Theories of Liability.</u>

Even if, *arguendo*, the Fifth, Sixth and Seventh Causes of Action were not entirely precluded as a matter of law as to all defendants (existing and proposed) because they are claims in quasi-contract where a contract indisputably governs the subject matter at issue, they would still be barred as to the Futility Defendants to the extent they purport to base such claims on a conclusory veil-piercing notion.

"[A] Plaintiff is required to allege more than conclusory allegations to avoid dismissal and subject the Defendants to what would amount to a discovery 'fishing expedition.'" *Piechowicz v. Lancaster Cent. Sch. Dist.*, 2022 WL 22782841, at *16 (W.D.N.Y. Jan. 18, 2022) (granting motion to dismiss without leave to amend); *see also Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612 (S.D.N.Y. 2014) (denying leave to amend based on alter ego theory due to conclusory nature of allegations); *Bonanni v. Straight Arrow Publishers, Inc.,* 133 A.D.2d 585, 587 (1st Dep't 1987) (dismissing alter ego veil-piercing claim and denying cross-motion to amend to add alter ego claim because claim was based on "only a legal conclusion with no factual allegations supporting the alter ego claim").

"Under New York Law, a party seeking to pierce the corporate veil must generally show that: '(1) the **owners** exercised **complete domination of the corporation** in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (quoting *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d

14

135, 141 (1993)) (emphasis added). Plaintiff has the burden of establishing both of these elements "in order to justify application of the veil-piercing doctrine." *Id.* (citation omitted). "Veil-piercing is a narrow exception to the doctrine of limited liability for corporate entities permitted only under extraordinary circumstances." *Schwartz v. Sensei, LLC*, 2020 WL 5817010, at *8 (S.D.N.Y. Sept. 30, 2020) (citation and internal quotation marks omitted). Under New York law, "[i]t is well established that individual officers or directors are not personally liable on contracts entered into on behalf of a corporation if they do not purport to bind themselves individually." *Ridgeline Constructors, Inc. v. Elmira Glass Tech. Corp.*, 183 A.D.2d 1041, 1044 (3d Dep't 1992).

Here, Plaintiff's basis for bringing the Futility Defendants into this litigation is an overbroad and wholly conclusory veil-piercing argument against, in effect, every company that markets under the Arizona Beverages banner, along with an individual officer of Defendant, Mr. Menashi (who is not, and Plaintiff does not allege him to be, an owner of Arizona USA or any other proposed corporate defendant here). Yet the Proposed Amended Complaint is barren of factual allegations sufficient to allege claims against the Futility Defendants in anything beyond the most conclusory fashion. *See, e.g.*, PAC at ¶¶ 72(g)-(h). These paragraphs in the Proposed Amended Complaint are little more than legal conclusions repackaged as allegations without the necessary factual basis to demonstrate their validity.[12] This insufficiency is particularly clear in light of the Proposed Amended Complaint utterly failing to allege, in anything more than

---

[12] Certain statements in the Motion, while not directly relevant, require correction. Plaintiff asserts that "[i]n 2015, Defendant Arizona USA (through Mr. Cunningham) hired Plaintiff, based on an engagement letter that was addressed to Arizona USA and stated that Arizona USA would receive the bills." PAC, ¶ 72(a). That is demonstrably false for several reasons. *First*, the street address listed on the letter that formed the Agreement is irrelevant as to the *contracting party*—and the Agreement never identifies "Arizona USA," but rather expressly states that Plaintiff was being retained "for legal counsel and representation of [Arizona Mexico.]" Decl., Ex. 1 at 1. *Second*, the Agreement does not state Arizona USA would "receive the bills." *See generally* Decl., Ex. 1. *Third*, Plaintiff's own invoices following the Agreement, also never identify "Arizona USA." *See* PAC, Composite Ex. B. Accordingly, paragraphs 72(g)-(h) of the PAC are not only without support but also are contradicted by documentary evidence before this Court.

6384040.v1

conclusory fashion, that any of the Futility Defendants own, let alone "completely dominated," Arizona USA or Arizona Mexico.

Plaintiff's cited authorities do not support its proposed claims against the Futility Defendants. *Phillips*, 955 F. Supp. 2d 201, is a case about a plaintiff working in exchange for equity in a joint venture limited liability company, and in which there was a clear "meeting of the minds" as between the plaintiff and the defendants as to establish a contractual relationship *with all of the defendants*. Such is not the case here. Absent Plaintiff's conclusory assertions in the Proposed Amended Complaint, there is not one shred of factual allegation linking Arizona International, BMU, or Mr. Menashi *in his individual capacity* to the Agreement or the work Plaintiff performed pursuant to the Agreement. Further, Plaintiff's reliance on *Phillips* to support its veil-piercing argument is without merit. *First*, Plaintiff relies upon the Magistrate Judge's Report and Recommendation, *not* the opinion of the Court, to support its argument. *See* Mot. at 11-12; *Phillips*, 955 F. Supp. 2d at 238. *Second*, the Report and Recommendation makes clear that the Magistrate Judge decided the veil-piercing issue under *Colorado* law, not New York law. *See Phillips*, 955 F. Supp. 2d at 226, 239 ("The question of whether a Colorado corporation's veil should be pierced, however, is a question of Colorado law. … Colorado law therefore governs Plaintiff's claims for breach of contract, quantum meruit, promissory estoppel, and unjust enrichment"). Under New York law, the requisite showing that the Futility Defendants are alter egos of Defendant (as Plaintiff now alleges, *see* PAC ¶ 72(g)) hinges on "the absence of formalities in corporate decision-making or inadequate capitalization." *Xiotech Corp. v. Express Data Prods. Corp.*, 11 F. Supp. 3d 225, 237 (N.D.N.Y. 2014). Moreover, "[m]ere use of the corporate form to avoid personal liability is not improper." *Id.* (citing *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)). Even Plaintiff admits that it was Arizona Mexico that paid its bills for years. *See* PAC, ¶¶

16

30-31, 33. And there is no evidence to suggest that corporate formalities were not observed—only Basham's speculative and conclusory *perception* of the same. That is insufficient to support its causes of action against the Futility Defendants. Accordingly, *Phillips* is inapposite.

Accordingly, Plaintiff's Motion is futile as to Arizona International, BMU, and Mr. Menashi, and should be denied as to those proposed new parties.

## **CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion (i) as to the entirety of the Fifth, Sixth and Seventh Causes of Action in the Proposed Amended Complaint or, in the alternative, (ii) as to the Proposed New Defendants (aside from Arizona Mexico), and grant Defendant such other and further relief as to the Court may seem just and proper.

Dated: White Plains, New York
       March 24, 2025

                                        Respectfully submitted,

                                        */s/ Joshua E. Kimerling*

                                        By:    Joshua E. Kimerling
                                               Seth M. Pavsner
                                        445 Hamilton Avenue, 14th Floor
                                        White Plains, New York 10601
                                        Tel: (914) 761-1300
                                        *Attorneys for Defendant*

17

## CERTIFICATE OF SERVICE

Seth M. Pavsner, an attorney duly admitted to the practice of law in the United States District Court for the Southern District of New York, hereby certifies that, on the 24th day of March, 2025, the foregoing Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend Complaint was served on Plaintiff's counsel via e-mail pursuant to the Honorable Nelson S. Roman's Individual Practice Rules.

*/s/ Seth M. Pavsner*
Seth M. Pavsner

6384040.v1